**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**PEDRO ROJAS, HEDIBERTO RAMIREZ PEREZ, MARIBEL LOPEZ MARTINEZ,** and **ARGENTINA JUAREZ-LOPEZ** on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

**ANDREW McCOY**, Special Agent, Homeland Security Investigations, in his individual capacity; **LINDSAY VALENTINO**, Special Agent, Homeland Security Investigations, in her individual capacity; **MICHAEL DONNELL**, Deportation Officer, Immigration and Customs Enforcement, in his individual capacity**; JAKE MATTHEW BELL,** Agent, Homeland Security Investigations, in his individual capacity; **JASON BURRELL**, Agent, United States Border Patrol, in his individual capacity; **FOSTER RUBINSTEIN**, Agent, United States Border Patrol, in his individual capacity; **J. DI BELLA**, Agent, United States Border Patrol, in his individual capacity; **IAN BROCKWAY**, Agent, United States Border Patrol, in his individual capacity; **DENNIS LAST NAME UNKNOWN**, Agent, United States Border Patrol, in his individual capacity; **BRANDON GEER**, Deportation Officer, Immigration and Customs Enforcement, in his individual capacity; **DON HILTON**, Sheriff, Oswego County, in his individual capacity; **BRIAN SCHENCK**, Sheriff, Cayuga County, in his individual capacity; **EDGAR LORENZO**, Agent, United States Border Patrol, in his individual

**Case No. 5:26-cv-01716-ECC-ML**

**PLAINTIFF HEDIBERTO RAMIREZ PEREZ'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION**

capacity; **JAVIER LORENZO**, Agent, United States Border Patrol, in his individual capacity; **DANIEL HUTCHINGS**, Agent, United States Border Patrol, in his individual capacity; **CHARLIE RODRIGUEZ**, Agent, United States Border Patrol, in his individual capacity; **NICHOLAS MULZOFF**, Agent, United States Border Patrol, in his individual capacity; **REGAN D.,** Agent, Homeland Security Investigations, in her individual capacity; **AGENTS DOE 1-60,** Officers, United States Border Patrol, Homeland Security Investigations, Immigration and Customs Enforcement, Internal Revenue Service, Cayuga County Sheriff's Office, and Oswego County Sheriff's Office**;** **MARKWAYNE MULLIN**, Secretary of the Department of Homeland Security, in his official capacity; **DAVID VENTURELLA**, Acting Director of Immigration and Customs Enforcement, in his official capacity; **THOMAS BROPHY**, Director of Enforcement and Removal Operations for the Buffalo Field Office of Immigration and Customs Enforcement, in his official capacity; and **JAMES D'AMATO**, Chief Patrol Agent, United States Border Patrol, Buffalo Sector, in his official capacity;

Defendants.

**PLAINTIFF HEDIBERTO RAMIREZ PEREZ'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Page


PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS .......... 2

I. Eddie's Background and Immigration History .......... 2

II. The NBC Operation and Eddie's Unlawful Arrest .......... 4

III. Eddie's Detention and Summary Removal .......... 5

IV. Eddie and His Family Are Suffering Irreparable Harm .......... 6

LEGAL STANDARD .......... 6

ARGUMENT .......... 7

I. EDDIE IS LIKELY TO SUCCEED ON THE MERITS. .......... 7

A. Eddie's Seizure, Arrest, Detention, and Summary Removal Violated the Administrative Procedure Act. .......... 7

1. Eddie's Removal Is Final Agency Action. .......... 8

2. Eddie's Seizure, Arrest, Detention, and Summary Removal was Contrary to Law. .......... 8

3. Defendants' Actions Violated the *Accardi* doctrine. .......... 12

4. Defendants' Actions Were Arbitrary and Capricious. .......... 15

B. Eddie's Summary Removal Violated his Right to Due Process. .......... 17

1. The first *Mathews* factor weighs in Eddie's favor. .......... 18

2. The second *Mathews* factor weighs in Eddie's favor. .......... 19

3. The third *Mathews* factor weighs in Eddie's favor. .......... 20

II. EDDIE SUFFERS ONGOING IRREPARABLE HARM FROM HIS UNCONSTITUTIONAL REMOVAL AND SEPARATION FROM FAMILY. .......... 21

III. PROTECTING EDDIE'S CONSTITUTIONAL AND STATUTORY RIGHTS IS IN THE PUBLIC INTEREST AND OUTWEIGHS ANY POTENTIAL HARDSHIP TO THE GOVERNMENT. .......... 22

IV. EDDIE SHOULD BE RETURNED TO NEW YORK .......... 23

CONCLUSION .......... 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A. A. R. P. v. Trump*,
605 U.S. 91 (2025)....................20

*Abrego Garcia v. Noem*,
777 F. Supp. 3d 501 (D. Md. 2025), *application to vacate granted in part and denied in part,* 145 S. Ct. 1017 (2025) .................... *passim*

*Abrego Garcia v. Noem*,
811 F. Supp. 3d 741 (D. Md. 2025)....................24

*Bennett v. Spear*,
520 U.S. 154 (1997)....................8

*Ceesay v. Kurzdorfer*,
781 F. Supp. 3d 137 (W.D.N.Y. 2025)....................21

*Chen v. Almodovar*,
No. 25-3169, ECF No. 49.1 (2d Cir. May 6, 2026)....................14

*Connecticut Dep't of Env't Prot. v. O.S.H.A.*,
356 F.3d 226 (2d Cir. 2004)....................21

*D.V.D. v. U.S. Dep't of Homeland Sec.*,
784 F. Supp. 3d 401 (D. Mass. 2025)....................24

*Doe 1 v. Noem*,
No. CV 26-2331, 2026 WL 927961 (C.D. Cal. Mar. 30, 2026)....................24

*Doe v. Noem*,
832 F. Supp. 3d 353 (S.D.N.Y. 2026)....................21

*Duarte v. Warden*,
No. EP-26-CV-00089, 2026 WL 1392585 (W.D. Tex. 2026)....................24

*F.C.C. v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009)....................15

*Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*,
954 F.3d 118 (2d Cir. 2020)....................12

*Florida v. Bostick*,
501 U.S. 429 (1991)....................9

*Hadwan v. U.S. Dept. of State*,
139 F.4th 209 (2d Cir. 2025)....................17, 18

*Hechavarria v. Sessions*,
891 F.3d 49 (2d Cir. 2018)....................15, 17, 18

*Hernandez v. Sessions*,
872 F.3d 976 (9th Cir. 2017)....................21

*Hernandez v. United States*,
939 F.3d 191 (2d Cir. 2019)....................10

*Immigr. Ctr. for Women & Child. v. Noem*,
351 F.R.D. 324 (C.D. Cal. 2026)....................21

*INS v. Delgado*,
466 U.S. 210 (1984)....................9

*Jimenez v. Bostock*,
No. 3:25-cv-00570-MTK, 2025 WL 2430381 (D. Or. Aug. 22, 2025)....................14

*Judulang v. Holder*,
565 U.S. 42 (2011)....................15

*Kakar v. U.S. Citizenship & Immigr. Servs.*,
29 F.4th 129 (2d Cir. 2022)....................16

*Khabazha v. U.S. Immigr. & Customs Enf't*,
No. 25-CV-5279 (JMF), 2025 WL 3281514 (S.D.N.Y. Nov. 25, 2025)....................23

*Lopez v. Blanche*,
No. 2:26-CV-01298-CDS-EJY, 2026 WL 1875797 (D. Nev. June 29, 2026)....................24

*Make the Road New York v. Pompeo*,
475 F. Supp.3d 232 (S.D.N.Y. 2020)....................21

*Martinez-Andino v. U.S. Dep't of Homeland Sec.*,
No. CV 26-1208 (BAH), 2026 WL 1801137 (D.D.C. June 23, 2026)....................24

*Mathews v. Eldridge*,
424 U.S. 319 (1976)....................18, 19, 20, 21

*Matter of Sugay*,
17 I. & N. Dec. 637 (B.I.A. 1981)....................13

*Mercado v. Noem*,
800 F. Supp. 3d 526 (S.D.N.Y. 2025)........10

*Montilla v. INS*,
926 F.2d 162 (2d Cir. 1991)........12, 15

*Morton v. Ruiz*,
415 U.S. 199 (1974)........14

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)........15, 16

*Ms. L. v. U.S. Immigr. & Customs Enf't*,
310 F. Supp. 3d 1133 (S.D. Cal. 2018), *modified*, 330 F.R.D. 284 (S.D. Cal. 2019)........23

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
883 F.3d 32 (2d Cir. 2018)........6

*New York v. U.S. Dep't of Com.*,
351 F. Supp. 3d 502 (S.D.N.Y. 2019), *aff'd in part, rev'd in part and remanded sub nom. Dep't of Com. v. New York*, 588 U.S. 752 (2019)........7, 9, 17

*New York v. U.S. Dep't of Homeland Sec.*,
969 F.3d 42 (2d Cir. 2020)........6

*Nken v. Holder*,
556 U.S. 418 (2009)........20, 22

*Noem v. Abrego Garcia*,
145 S. Ct. 1017 (2025)........*passim*

*Orellana Cruz v. Oddo*,
No. 3:26-CV-00284, 2026 WL 1650733 (W.D. Pa. June 8, 2026)........24

*Pablo Pablo v. Lyons*,
811 F. Supp. 3d 833 (W.D. Tex. 2025)........24

*Paykina ex rel. E.L. v. Lewin*,
387 F. Supp. 3d 225 (N.D.N.Y. 2019)........20, 22

*Picca v. Mukasey*,
512 F.3d 75 (2d Cir. 2008)........15

*Quintanilla v. Mullin*,
No. 25-CV-02513-LKG, 2026 WL 1481116 (D. Md. 2026)........24

*Rea v. Ball*,
No. 9:26-CV-01248 (AMN), 2026 WL 1959270 (N.D.N.Y. July 2, 2026) ..............................9

*Reid v. Bondi*,
132 F.4th 109 (2d Cir. 2024), *abrogated on other grounds*, *Al Saidi v. Blanche*, -- F.4th --, 2026 WL 2220394 (2d Cir. Aug. 3, 2026) ..............................14

*Reno v. Flores*,
507 U.S. 292 (1993)..............................17, 18

*Riley v. Bondi*,
606 U.S. 259 (2025)..............................11

*Roe v. United States*,
No. 18-CV-2644 (VSB), 2019 WL 1227940 (S.D.N.Y. Mar. 15, 2019)..............................19

*Sajous v. Decker*,
No. 18-CV-2447 (AJN), 2018 WL 2357266 (S.D.N.Y. May 23, 2018) ..............................20

*Sanchez Cruz v. Mullin*,
833 F. Supp. 3d 785 (E.D. Mich. 2026)..............................11, 19, 20, 25

*Service v. Dulles*,
354 U.S. 363 (1957)..............................12

*Smith v. Resor*,
406 F.2d 141 (2d Cir. 1969)..............................12

*Smriko v. Ashcroft*,
387 F.3d 279 (3d Cir. 2004)..............................8

*United States ex rel. Accardi v. Shaughnessy*,
347 U.S. 260 (1954)..............................7, 12

*United States v. Juarez-Lopez*,
813 F. Supp. 3d 326 (N.D.N.Y. 2025) ..............................4, 9

*United States v. Toscanino*,
500 F.2d 267 (2d Cir. 1974)..............................22, 25

*Valdez v. Joyce*,
803 F. Supp. 3d 213 (S.D.N.Y. 2025)..............................23

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977)..............................17

*Vitarelli v. Seaton*,
359 U.S. 535 (1959) ..... 12

*Waldron v. INS*,
17 F.3d 511 (2d Cir. 1993) ..... 14

*Yeleshev v. Larocco*,
No. 26-CV-2204-SJB, 2026 WL 1353806 (E.D.N.Y. May 14, 2026) ..... 10

*Ying Fong v. Ashcroft*,
317 F. Supp. 2d 398 (S.D.N.Y. 2004) ..... 15

*Zadvydas v. Davis*,
533 U.S. 678 (2001) ..... 17

**Statutes**

5 U.S.C. § 704 ..... 8

5 U.S.C. § 706(2)(A) ..... 9, 11, 15

5 U.S.C. § 706(2)(A)-(D) ..... 7, 9

5 U.S.C. § 706(2)(B) ..... 9, 10

5 U.S.C. § 706(2)(C) ..... 9, 10

5 U.S.C. § 706(2)(D) ..... 12

8 U.S.C. § 1101(a)(47) ..... 3, 19

8 U.S.C. § 1101(a)(47)(B) ..... 11

8 U.S.C. § 1226(a) ..... 10, 23

8 U.S.C. § 1229b(b) ..... 3

8 U.S.C. § 1231(a)(1)(A)-(B) ..... 11

8 U.S.C. § 1357(a)(2) ..... 9

**Other Authorities**

8 C.F.R. § 236.1(b)(1) ..... 13

8 C.F.R. § 236.1(c)(9) ..... 13, 14

8 C.F.R. § 287.8(b)(1) ..... 13

8 C.F.R. § 287.8(b)(2) ....................13

8 C.F.R. § 287.8(c)(2)(ii) ....................13

8 C.F.R. § 1003.6 ....................19

8 C.F.R. § 1003.6(a) ....................3, 14, 23

8 C.F.R. § 1236.1(d)(1) ....................3, 13

8 C.F.R. § 1241.1(a) ....................14

EOIR Policy Manual,
Pt. III, ch. 5.2 ....................3, 4

EOIR Policy Manual,
Pt. III, ch. 5.2(b) ....................14

ICE Policy Directive No. 11061.1, § 3.1, Facilitating the Return to the United
States of Certain Lawfully Removed Aliens (Feb. 24, 2012) ....................23

U.S. Const., amend. I ....................10

U.S. Const., amend. IV ....................1, 9, 24

U.S. Const., amend. V ....................2, 7, 17, 21

**PRELIMINARY STATEMENT**

On September 4, 2025, Plaintiff Hediberto Ramirez Perez ("Eddie") woke up in his home in Martville, New York with his U.S. citizen wife of eleven years, Elizabeth ("Liz"), and their two U.S. citizen children. Although originally from Guatemala, Eddie had lived in the United States continuously for over two decades. He was authorized to work, had a valid social security number, and had a pending appeal before the Board of Immigration Appeals ("BIA"). Eddie and Liz worked together at Nutrition Bar Confectioners, Inc. ("NBC") in Cato, New York.

When Eddie and Liz left their house for work, they did not realize it was the last time Eddie would see their children. Shortly after 9 a.m., dozens of armed federal and local agents descended on NBC with the purpose of seizing every Latino worker on site. Agents subjected the workers to non-consensual questioning about their citizenship status and arrested as many Latino immigrants as possible. The dragnet deliberately exceeded the scope of two search warrants, disregarded the workers' Fourth Amendment rights, and was motivated by discriminatory animus against people of Latino descent and Latino immigrants.

Eddie, like many of his Latino coworkers at NBC, was arrested without a warrant or probable cause. Defendants detained him without conducting any individualized assessment of his flight risk in violation of the Immigration and Nationality Act ("INA") and its implementing regulations. Eddie repeatedly presented agents with information bearing on his flight risk—his valid Employment Authorization Document ("EAD") and a pending immigration case—yet agents summarily dismissed this evidence rather than investigate further. At no point did any agent ask him about his family ties, his length of residence in the community, or whether he had minor children whose care he needed to arrange before being taken into custody.

Despite the absence of an arrest warrant, probable cause, or any evidence that Eddie posed a flight risk, agents arrested and detained him. Defendants then denied him the ability to speak to

an attorney, kept his family in the dark about his whereabouts, and flew him to Texas the next morning. Within 72 hours of his arrest, Defendants placed him on a removal flight to Guatemala. Defendants removed Eddie without obtaining a final order of removal or consent to voluntary departure, or letting him speak to his lawyer, or bringing him before an immigration judge. The Fifth Amendment, federal statutes, and regulations prohibit removing people in this manner. Eddie is therefore likely to succeed on the merits of his claims that his summary removal violated the United States Constitution and the Administrative Procedure Act ("APA").

Eddie respectfully asks this Court to restore him to the *status quo ante*—the position he was in prior to his unlawful seizure, arrest, detention, and removal. Courts across the country, including the Supreme Court, have ordered the government to remedy similar illegal removals by "facilitating" the return of individuals who, like Eddie, were unlawfully removed from the United States. Every day that Eddie remains stranded in Guatemala, separated from his wife and children, deepens the irreparable harm that he and his family suffer as a direct consequence of his unconstitutional removal. The balance of equities decisively favors relief: Correcting an unlawful removal imposes no prejudice on defendants, and the public interest heavily weighs against letting the government benefit from its own illegal conduct. Eddie therefore brings this motion against Defendants Mullin, Venturella, Brophy, and D'Amato (the Official-Capacity defendants) and respectfully asks this Court to order those Defendants to facilitate his return to the United States so that he may be reunited with his family and continue to pursue his ongoing cancellation-of-removal application.

## STATEMENT OF FACTS

### I. Eddie's Background and Immigration History

Eddie was born in Guatemala and arrived in the United States in May 2005. Declaration of Hediberto Ramirez Perez (Eddie Decl.) at ¶ 4. He lived in the Fulton area for about 20 years. Eddie

Decl. ¶ 6. He resided there with his U.S. citizen wife, Liz, and their two teenage U.S. citizen sons until Defendants seized and removed him in September 2025. Eddie Decl. ¶¶ 4-10; Declaration of Elizabeth Ramirez-Abrams ("Liz Decl.") at ¶¶ 4-8.[1]

Eddie and Liz began dating in 2008 and have been married since 2014. Liz Decl. ¶¶ 5-8; Eddie Decl. ¶¶ 7-10. They are full partners in every sense: each provides roughly half the family's income, and they share household and parenting responsibilities equally. Liz Decl. ¶¶ 9-10; Eddie Decl. ¶¶ 11-12. Eddie is a devoted husband and father, and his wife and sons love and depend on him. Eddie Decl.¶¶ 10-16, 47-52, 55; Liz Decl.¶¶ 10-16, 31-32. Both sons have learning disabilities; one suffers from an anxiety disorder for which he is prescribed medication and shows symptoms of autism for which he is undergoing evaluation by doctors. Eddie Decl. ¶¶15-16; Liz Decl. ¶¶ 12-15. Liz also has a learning disability and mental health challenges of her own. Liz Decl. ¶ 16. Eddie's steady support has been critical to helping his family meet these challenges. Eddie Decl. ¶¶ 10-16, 47-52, 55; Liz Decl. ¶¶ 10-16, 31-32.

In 2018, Eddie was detained by immigration authorities and subsequently released on bond, which required a determination that Eddie did not pose a flight risk or danger to society that would justify his detention. 8 C.F.R. § 1236.1(d)(1); Eddie Decl. ¶ 17; Grossman Decl. ¶ 5, Ex. 3. Eddie filed an application for cancellation of removal in his removal case, which, if granted, would provide him a pathway to a green card. 8 U.S.C. § 1229b(b); Grossman Decl. ¶ 6, Ex. 4.

On June 14, 2023, an immigration judge ("IJ") denied Eddie's application for cancellation of removal and issued an order of removal. *Id*. On July 14, 2023, Eddie timely appealed to the BIA, which automatically stayed the removal order. *See* Grossman Decl. ¶ 7, Ex. 5; 8 U.S.C. §

[1] Eddie's and Liz's declarations are Exhibits 1 and 2, respectively, to the Declaration of Perry M. Grossman ("Grossman Decl."), filed concurrently in support of this motion.

1101(a)(47); 8 C.F.R. § 1003.6(a); EOIR Policy Manual, Pt. III, ch. 5.2. That appeal remains pending. *Id*. At the time of his unlawful arrest on September 4, 2025, Eddie had an EAD that was valid through 2029, authorizing him to work lawfully in the United States, and he was employed as a line technician at NBC. Eddie Decl. ¶¶ 19-21; Grossman Decl. ¶ 8, Ex. 6.

## II. The NBC Operation and Eddie's Unlawful Arrest

On September 4, 2025, roughly sixty armed federal and local law enforcement agents executed a large-scale worksite immigration enforcement operation at NBC. *United States v. Juarez-Lopez*, 813 F. Supp. 3d 326, 334 (N.D.N.Y. 2025).[2] Agents swept through the factory and ordered Eddie to go to the break room, Eddie Decl. ¶ 23, where they subjected him to suspicion-less, non-consensual questioning about his immigration and work authorization status. *Juarez-Lopez*, 813 F. Supp. 3d at 340. Eddie did not feel free to refuse those orders. Eddie Decl. ¶ 23-24.[3]

As agents ordered workers in the break room to self-identify as citizens or noncitizens authorized to work, *Juarez-Lopez*, 813 F. Supp. 3d. at 336, Eddie approached an agent and showed him his valid EAD, which displays USCIS Category "C10"—a designation signifying that he had an ongoing cancellation-of-removal proceeding. Grossman Decl. ¶ 8, Ex. 6, ¶ 10, Ex. 8; Eddie Decl. ¶¶ 26-27. Eddie was then escorted to another room where another agent questioned him. *Id*. ¶ 28. That agent told Eddie that his EAD meant nothing. *Id*. Eddie subsequently told a group of agents that he had a valid EAD and a pending immigration case and pleaded with them to let him

[2] Because this case arises out of the same events and addresses many of the same factual and legal issues as in *United States v. Juarez-Lopez* and based on instructions from the clerk's office, Plaintiffs intend to file a Notice of Related Case after an opportunity to confer in good faith with all parties because "a substantial saving of judicial resources is likely to result" from assigning this case to the presiding judge of that case. NDNY General Order 12(G)(5).

[3] The agents had two warrants, neither of which permitted this suspicion-less detention for non-consensual questioning. *Juarez-Lopez*, 813 F. Supp. 3d at 334. Instead, the warrants narrowly authorized a search for records related to alleged unlawful employment practices and document fraud and "systematic *consensual* questioning." *Id.* at 333.

leave, but they refused. *Id*. ¶ 29. When Eddie attempted to call his immigration attorney, an agent ordered him to drop the call. *Id.* ¶ 30. Another agent then directed him to put his phone into a plastic bag where he could not access it. *Id*. ¶ 31.

Eventually, an agent escorted Eddie to the parking lot and informed him that he was being taken into custody. *Id*. at ¶ 33. An agent then drove him to the Oswego Border Patrol Station. *Id*. at ¶ 34. At no point did any agent ask Eddie about his pending immigration case, his two decades of residence in the United States, or his family ties to U.S. citizens. *Id*. ¶ 34.

### III. Eddie's Detention and Summary Removal

At Oswego Station, Eddie was placed in a cell by himself. *Id*. ¶ 35. He asked to speak to his family and his attorney, but agents denied both requests. *Id*. Agents at Oswego presented Eddie with voluntary departure papers, but he refused to sign them. *Id*. Later that evening, Eddie was taken to the Buffalo Federal Detention Facility ("BFDF"), where he was placed in a cell with other noncitizens. *Id*. ¶ 36. While at BFDF, agents again presented Eddie with voluntary departure forms in English. *Id*. ¶ 37. Eddie again refused to sign anything without speaking to his attorney. *Id.*

Early on Friday, September 5, 2025, the day after his unlawful arrest, agents woke Eddie and, without explanation, took him to the airport and transferred him to a Border Patrol station in McAllen, Texas. *Id*. ¶ 38. Eddie arrived at McAllen Station at approximately 2:00 p.m. *Id*. The next day, Saturday, September 6, Eddie was told that he would be given five minutes to call his family. *Id*.¶ 41. He called his wife, but the guards cut off his call after only two minutes, right after Eddie asked Liz to get a hold of his lawyer. *Id*.; Liz Decl. ¶ 23. Eddie asked agents if he could call his attorney, but the agents said he could not do so until Monday. Eddie Decl. ¶ 41.

On Sunday, September 7, agents woke Eddie early and told him to prepare for a removal flight. *Id*. ¶ 42. This was the first time any official informed Eddie that he was being removed. *Id*.

The agents did not provide any explanation or justification for his removal. *Id*. Instead, Eddie was shackled and put on a flight to Guatemala where he remains today. *Id*. Defendants never obtained a final order of removal for Eddie or his consent to voluntary departure. Eddie Decl. ¶¶ 43-44.

### IV. Eddie and His Family Are Suffering Irreparable Harm

Eddie's and his family's hardships have been severely exacerbated by his summary removal. Liz Decl. ¶¶ 25-33; Eddie Decl. ¶¶ 45-56. The boys have been hit hard by the sudden loss of their father and exhibit increasing emotional and behavioral health problems without his support. Liz Decl. ¶ 28. The stress of Eddie's departure has also worsened Liz's mental health struggles and caused her to work through physical injury out of economic necessity. *Id.* ¶ 29. Eddie has also struggled without his family, and the stress has caused him difficulty sleeping and eating. Eddie Decl. ¶ 53. He has lost forty-five pounds since the last time he saw them in person. *Id.* Since his summary removal, the family has lost over half of their household income. Eddie Decl. ¶¶ 11, 47; Liz Decl. ¶ 9, 26. They are struggling to pay bills and have received shut-off notices for their electricity. *Id*. ¶ 26. Liz and her children cannot afford to visit Eddie in Guatemala. *Id*.

Eddie is ready and willing to return to the United States. Eddie Decl. ¶ 54. His BIA appeal remains pending, and he is eager to be reunited with his family and participate in his immigration appeal. Eddie Decl. ¶¶ 54-56. And Eddie's family wants and needs him home. Liz Decl. ¶¶ 31-33.

## LEGAL STANDARD

To obtain a preliminary injunction, a plaintiff must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58-59 (2d Cir. 2020) (citations omitted). Where "the government is a party to the suit, the final two factors merge." *Id*. If a plaintiff meets this standard, the plaintiff should be returned to the "*status quo ante*"—that is, "the last actual, peaceable

uncontested status which preceded the pending controversy." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 & n.5 (2d Cir. 2018) (internal citations omitted).

## ARGUMENT

### I. EDDIE IS LIKELY TO SUCCEED ON THE MERITS.

Eddie's seizure, arrest, detention, and summary removal violated the APA and the Fifth Amendment. Eddie has a pending appeal before the BIA, and he did not have—and still does not have—a final order of removal. Eddie did not sign voluntary departure papers. Courts, including the U.S. Supreme Court, have found that to remedy similar summary removals, the government must facilitate the return of a wrongfully deported person "to ensure that his case is handled as it would have been had he not been improperly" deported. *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025); *see also Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 517 (D. Md. 2025), *application to vacate granted in part and denied in part,* 145 S. Ct. 1017 (2025) (holding forced removal of a noncitizen in violation of the INA and its regulations was unlawful and agreeing "Defendants forced removal to El Salvador without *any process* constitutes a clear constitutional violation"). Eddie is likely to succeed on the merits of his claims and should be restored to the status quo before his unlawful seizure, arrest, detention, and removal.

#### A. Eddie's Seizure, Arrest, Detention, and Summary Removal Violated the Administrative Procedure Act.

Eddie is likely to succeed on his claim that his seizure, arrest, detention, and summary removal violated the APA. The APA requires courts to "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A)-(D); *see New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d 502, 628 (S.D.N.Y. 2019) ("*Dep't of Com.*"), *aff'd in part, rev'd in part and remanded sub nom. Dep't of Com. v. New York*, 588 U.S. 752 (2019). Agency action must also be set aside when it violates the *Accardi*

doctrine's requirement that agencies follow their own regulations. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266-67 (1954).

**1. Eddie's Removal Is Final Agency Action.**

Defendants' removal of Eddie to Guatemala constitutes final agency action reviewable under the APA. The removal "mark[ed] the 'consummation' of the agency's decisionmaking process" and is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997) (citation omitted); *see Abrego Garcia*, 777 F. Supp. 3d at 517 (government did "not dispute that its expulsion of [plaintiff] to El Salvador constitute[d] a final agency action"). Moreover, a court's review of final agency action, "generally speaking, encompasses all of a petitioner's contentions of legal error by the agency at any stage of the agency's proceedings." *Smriko v. Ashcroft*, 387 F.3d 279, 291 (3d Cir. 2004) (citing 5 U.S.C. § 704). Under this principle, the entire sequence of Defendants' conduct—Eddie's warrantless seizure, his arrest without probable cause, his detention without an individualized flight-risk assessment, his denial of access to counsel, and his summary removal without a final order—is subject to judicial scrutiny as part of the final agency action of removing him. *See Abrego Garcia*, 777 F. Supp. 3d at 510 (noting that the agency had no legal grounds to arrest, detain, or remove Mr. Abrego Garcia). Defendants acted contrary to law, in violation of their own regulations and policies, and in an arbitrary and capricious manner, and the entire course of agency action must be set aside.

**2. Eddie's Seizure, Arrest, Detention, and Summary Removal was Contrary to Law.**

Under the APA, agency action must be set aside when it is "not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "without observance of

procedure required by law." *Dep't of Com.*, 351 F. Supp. 3d at 628 (quoting 5 U.S.C. § 706(2)(A)-(D)). Defendants' seizure, arrest, detention, and removal of Eddie should be set aside.

First, Eddie's seizure at NBC violated the Fourth Amendment and was therefore "contrary to constitutional right" under 5 U.S.C. § 706(2)(B). The Fourth Amendment only permits immigration officers to question individuals about citizenship or immigration status without individualized suspicion when the encounter is consensual. *INS v. Delgado*, 466 U.S. 210, 216-217 (1984); *Florida v. Bostick*, 501 U.S. 429, 434-435 (1991). Here, agents conducted a mass seizure upon entering the NBC factory, confining the workforce to the breakroom, posting agents at doors, and "direct[ing] those who did not self-identify to approach them for interviews." *Juarez-Lopez*, 813 F. Supp. 3d at 340. Eddie was among those seized without individualized suspicion. Eddie Decl. ¶¶ 22-24. Neither warrant authorized his seizure. *Juarez-Lopez*, 813 F. Supp. 3d at 339-40. Instead, as the court found, the agents' conduct was so "markedly different from that which the Government told the magistrate judge would occur" that it was "sufficiently deliberate" and the agents "sufficiently culpable" to justify sanctions. *Id*. at 346. Eddie's seizure was therefore an unreasonable seizure contrary to his Fourth Amendment rights and must be set aside.

Second, Eddie's warrantless arrest was "not in accordance with law" and was "in excess of statutory jurisdiction, authority, or limitations" under 5 U.S.C. § 706(2)(A), (C), and therefore must be set aside. Federal law, 8 U.S.C. § 1357(a)(2), permits a warrantless immigration arrest only where the officer has "reason to believe" the person is unlawfully present *and* "likely to escape before a warrant can be obtained," i.e., a flight risk. *Rea v. Ball*, No. 9:26-CV-01248 (AMN), 2026 WL 1959270, at *2 (N.D.N.Y. July 2, 2026). But there is no evidence that agents ever made a determination that Eddie was likely to escape before a warrant could be obtained. Instead, even "minimal further investigation" into his pending cancellation of removal case, valid

EAD, U.S. citizen wife and children, and prior release on bond would have shown otherwise. *Hernandez v. United States*, 939 F.3d 191, 209 (2d Cir. 2019).

Third, Eddie's detention was likewise "not in accordance with law" and "in excess of statutory jurisdiction, authority, or limitations" under 5 U.S.C. § 706(2)(A), (C). As a noncitizen in removal proceedings where no final order of removal has issued, Eddie's custody was governed by 8 U.S.C. § 1226(a), which permits arrest and detention only "[o]n a warrant issued by the Attorney General." *Yeleshev v. Larocco*, No. 26-CV-2204-SJB, 2026 WL 1353806, at *2-3, *8 (E.D.N.Y. May 14, 2026). Defendants did not have an arrest warrant for Eddie, nor was he served with one. Thus, his detention exceeded Defendants' statutory authority and must be set aside.

Fourth, the denial of Eddie's access to counsel was "contrary to constitutional right" under 5 U.S.C. § 706(2)(B) and also "not in accordance with law" and "in excess of statutory jurisdiction, authority, or limitations" under 5 U.S.C. § 706(2)(A), (C). While in Defendants' custody, Eddie's had a right to "hire and consult an attorney [that] is protected by the First Amendment," as well as "a statutory right to be represented by counsel at [his] own expense," which "is an integral part of the procedural due process to which [he] is entitled" as a noncitizen in removal proceedings. *Mercado v. Noem*, 800 F. Supp. 3d 526, 577 (S.D.N.Y. 2025) (citations omitted); *see id.* at 565-66 (finding "real and imminent First Amendment injury" where immigration detainees were "prevented from or seriously limited in their ability to exercise their right . . . to consult with and have the advice and assistance of legal counsel"). Defendants' repeated refusal to allow Eddie to contact his attorney "not only delay[ed] legal advice but prevent[ed] any chance to obtain legal advice prior to removal from the United States," which "interfere[d] with [his] ability. . . to assert potentially meritorious" arguments against his seizure, arrest, detention, and removal. *Mercado*, 800 F. Supp. 3d. at 565-66; *see* Eddie Decl. ¶¶ 30, 35, 37, 39-41.

Finally, Defendants' summary removal of Eddie was contrary to law because the removal period had not begun. Defendants had no legal authority to remove Eddie, whose cancellation of removal application was (and is) pending and who had no final order of removal at that time. Under 8 U.S.C. § 1231(a)(1)(A)-(B), the Attorney General's authority and obligation to remove a noncitizen, i.e., the "removal period," does not begin until, among other things, "the order of removal becomes administratively final." A removal order becomes administratively final upon "a determination by the [BIA] affirming such order" or the expiration of the time to seek such review. 8 U.S.C. § 1101(a)(47)(B); *see Riley v. Bondi*, 606 U.S. 259, 267 (2025).

Courts have set aside removals executed in these circumstances. In *Sanchez Cruz v. Mullin*, the government removed a noncitizen after he filed a motion to reopen his in-absentia removal order—a filing that by statute and regulation automatically stayed his removal. 833 F. Supp. 3d 785, 790-93 (E.D. Mich. 2026). The court held the removal "was not in accordance with law." *Id.* at 795 (quoting 5 U.S.C. § 706(2)(A)). The court did not find this error harmless, reasoning that the removal "caused the very injury the stay was designed to prevent": it "eliminated [his] statutory eligibility to file for asylum in the reopened proceedings and froze his case at the master calendar stage." *Id*. at 795. The parallel to Eddie's case is clear—as in *Sanchez Cruz*, Eddie was removed in violation of an automatic regulatory stay triggered by a pending challenge to his removal.

The district court in *Abrego Garcia* reached the same conclusion. There, the government conceded it had "no legal authority to arrest him, no justification to detain him, and no grounds to send him to El Salvador," 777 F. Supp. 3d at 507, and could not produce any executed removal order or related removal documents authorizing his transfer. *Id*. at 514. The court held that the government's expulsion of Abrego Garcia was "lawless, and thus in violation of the APA," because the government lacked any legal authority for the removal and had not "articulated any

rationale for taking such action." *Id*. at 517. As in *Abrego Garcia*, Defendants here have not identified any lawful authority for removing Eddie while his BIA appeal and attendant automatic stay were in force and have offered no contemporaneous rationale for doing so. Given these parallels, Eddie's removal—executed without a final order, in defiance of the automatic stay, and without any legal justification—was contrary to law and must be set aside.

**3. Defendants' Actions Violated the *Accardi* doctrine.**

Section 706(2)(D) independently requires courts to set aside agency action taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). In *United States ex rel. Accardi v. Shaughnessy*, the Supreme Court vacated a deportation order because the procedure preceding it did not comply with the agency's own regulations, i.e., "[r]egulations with the force and effect of law" as these "supplement the bare bones" of the statute. 347 U.S. 260, 265–68 (1954) (footnotes omitted). Such regulations are "binding upon [the administrator] as well as [a] citizen, and [] this principle holds even when the administrative action under review is discretionary in nature." *Service v. Dulles,* 354 U.S. 363, 372 (1957); *Smith v. Resor*, 406 F.2d 141, 145–46 (2d Cir. 1969). Having chosen to proceed under certain rules, an agency is likewise "bound by the regulations which he himself had promulgated." *Vitarelli v. Seaton*, 359 U.S. 535, 539–40 (1959). In the immigration context, the doctrine "is premised on fundamental notions of fair play underlying the concept of due process." *Montilla v. INS*, 926 F.2d 162, 167 (2d Cir. 1991); *see also Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020) (citing *Accardi*, 347 U.S. at 268) (explaining "government agencies are generally required to follow their own regulations"). Here, Defendants violated multiple regulations when they unlawfully seized, arrested, detained, and removed Eddie.

First, agents violated agency regulations when they forced Eddie into the breakroom and required him to answer questions about his immigration status without consent. While agents may ask questions "as long as the immigration officer does not restrain the freedom of an individual, not under arrest, to walk away," 8 C.F.R. § 287.8(b)(1), agents may not detain anyone for questioning, even briefly, unless "the immigration officer has a reasonable suspicion, based on specific articulable facts, that the person being questioned is . . . an alien illegally in the United States." *Id*. § 287.8(b)(2). As set forth above, Defendants unlawfully seized all employees at NBC, including Eddie, without any individualized suspicion. *See supra* Section I.A.2.

Second, Defendants' warrantless arrest of Eddie violated 8 C.F.R. § 287.8(c)(2)(ii), which imposes by regulation the requirement that the officer have reason to believe the person is "likely to escape before a warrant can be obtained." As set forth in Section I.A.2 above, no record of the operation reflects any such determination, and minimal further investigation into Eddie's pending cancellation of removal case, his valid EAD, his U.S. citizen wife and children, and his prior release on bond would have shown otherwise. Defendants likewise produced no warrant for his arrest or detention, and thus did not follow 8 C.F.R. § 236.1(b)(1).

Third, Defendants violated 8 C.F.R. § 236.1(c)(9) in re-detaining Eddie without formally revoking his 2018 release on bond upon a finding of changed circumstances. When a person "having been arrested and taken into custody, has been released," he may only be re-detained by formal revocation at "the discretion of" an enumerated class of senior officials, and any bond must be "revoked and canceled." 8 C.F.R. § 236.1(c)(9). Consistent with this framework, the BIA has held that where an IJ has previously determined custody, "no change should be made ... absent a change of circumstance." *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981). Here, Eddie was granted release on bond, Eddie Decl. ¶ 17; Grossman Decl. ¶ 5, Ex. 3, which under 8 C.F.R.

§ 1236.1(d)(1), required a finding that he posed little to no flight risk or danger to the community. As such, in order to re-detain Eddie, Defendants were required to follow the process specified in Section 236.1(c)(9), which they did not do. *See Jimenez v. Bostock*, No. 3:25-cv-00570-MTK, 2025 WL 2430381, at *5–6 (D. Or. Aug. 22, 2025) (finding re-detention without individualized determination of danger or flight risk violated the APA and Due Process rights); *Chen v. Almodovar*, No. 25-3169, ECF No. 49.1 (2d Cir. May 6, 2026) (granting release on own recognizance pending disposition of the appeal given DHS's previous determination that petitioner did "not present a risk of flight or danger to the community").

Finally, Defendants violated federal regulations when they improperly removed Eddie from the United States. 8 C.F.R. § 1003.6(a) explicitly bars execution of a removal order while a timely BIA appeal is pending. *Id*. (noting "the decision in any proceeding under this chapter from which an appeal to the Board may be taken shall not be executed ... while an appeal is pending ...."); *see also* EOIR Policy Manual, Pt. III, ch. 5.2(b) (bar on removal "remains in effect until the Board renders a final decision in the case"). As set forth above, Eddie's BIA appeal is pending, and, therefore, his order of removal issued by the IJ has not become final. Grossman Decl. ¶ 7, Ex. 5; 8 C.F.R. § 1241.1(a) (removal order becomes final upon *dismissal* of an appeal by the BIA).

Defendants' violations of federal regulations impeded Eddie's statutory rights, as described in Section I.A.2 above, and require that their actions be set aside. *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."). Because the automatic-stay regulation protects Eddie's right not to be removed from the United States while an appeal is pending, it rests on a "fundamental right derived from . . . a federal statute," and its breach requires vacatur without any showing of prejudice. *Waldron v. INS*, 17 F.3d 511, 518 (2d Cir. 1993); *see also Reid v. Bondi*, 132 F.4th 109,

127 (2d Cir. 2024) (no prejudice showing required where an agency fails to adhere to a regulation protecting a statutory or Constitutional right), *abrogated on other grounds*, *Al Saidi v. Blanche*, -- F.4th --, 2026 WL 2220394, at *5 n. 2 (2d Cir. Aug. 3, 2026); *Picca v. Mukasey*, 512 F.3d 75, 78–79 (2d Cir. 2008) (petitioner need show only "that 'the subject regulations were for the alien's benefit and that the [agency] failed to adhere to them'") (quoting *Montilla*, 926 F.2d at 169). Regardless, Eddie suffered prejudice. His summary removal deprived him of the automatic stay to which he was entitled while his BIA appeal is pending, and impaired his ability to pursue judicial review. *See Ying Fong v. Ashcroft*, 317 F. Supp. 2d 398, 403–04 (S.D.N.Y. 2004) (finding that a showing of prejudice is unnecessary, but, in any event, "[p]rejudice . . . is clear, for Fong's removal impedes her ability to consult with counsel and pursue administrative remedies"); *see also Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018) ("[S]tatutory procedural protections of judicial review and [a] stay[]" of removal "are essential tools in meeting the government's constitutional obligation to provide procedural due process for immigrants facing removal.").

**4. Defendants' Actions Were Arbitrary and Capricious.**

Independent of the statutory and regulatory violations above, Eddie's removal was "arbitrary, capricious, [and] an abuse of discretion." 5 U.S.C. § 706(2)(A). An agency must "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *accord Judulang v. Holder*, 565 U.S. 42, 53 (2011) (applying *State Farm* "arbitrary and capricious" standard to individual BIA immigration adjudication). An agency acts arbitrarily when it "entirely fail[s] to consider an important aspect of the problem," *State Farm*, 463 U.S. at 43, or "simply disregard[s] rules that are still on the books." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). The standard is also

violated where the agency offered no "contemporaneous explanation" from which a reviewing court could discern a rational basis for its action. *Kakar v. U.S. Citizenship & Immigr. Servs.*, 29 F.4th 129, 132–33 (2d Cir. 2022).

Defendants offered no such explanation here. There is no record that any official had probable cause to seize, question, or arrest Eddie; that any official followed the necessary procedures for re-detaining Eddie after he had been released on bond; or that any official conducted an individualized assessment of Eddie's case before ordering his removal. There is also no voluntary departure paperwork—indeed, Eddie repeatedly refused to sign such papers. Eddie Decl. ¶¶ 35, 37, 44. And there is no statement of reasons for his removal. Without a contemporaneous explanation, there is no "'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43 (citation omitted). Instead, Eddie was swept up in a mass suspicion-less seizure at his workplace and removed without any individualized consideration of his circumstances. The district court in *Abrego Garcia* found an identical failure to engage in reasoned decision-making dispositive: the government had not "articulated any rationale" for removing the plaintiff, and "nothing in the record suggest[ed] that [he] received any process at all." 777 F. Supp. 3d at 517. Moreover, Defendants cannot supply a rationale now. Agency action can only be upheld on the basis articulated by the agency itself at the time it acted and cannot be based on "post[-]hoc rationalizations." *See Kakar*, 29 F.4th at 133 (emphasis omitted).

As set forth above, *see supra* Sections I.A.2–3, each stage of Defendants' conduct—from the warrantless mass seizure at NBC, to Eddie's arrest without probable cause, to his detention without an individualized flight-risk determination, to his denial of access to counsel, to his summary removal without a final order—violated governing laws and regulations. This cascade of violations further demonstrates the absence of reasoned decision-making: no official at any

point paused to consider Eddie's individual circumstances, including his valid EAD, his pending BIA appeal on his cancellation of removal application, his U.S. citizen wife and children, his prior release on bond, or the legal constraints that prohibited his removal. *Dep't of Com.,* 351 F. Supp. 3d at 654 (collecting cases) ("dramatic departure[s]" from established "standards and practices" undermine any claim of reasoned decision-making).

Defendants' radical departures from established standards and practices foreclose any possibility that Eddie's removal was the product of reasoned decision-making; instead, they point toward an enforcement operation motivated by animus. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–268 (1977). Because Defendants have not supplied, and cannot supply, a reasoned basis for Eddie's removal and the actions that preceded it, his departure was arbitrary and capricious and violated the APA.

**B. Eddie's Summary Removal Violated his Right to Due Process.**

Eddie is likely to succeed on his claim that his summary removal violated his right to Procedural Due Process under the Fifth Amendment. "To prevail on a procedural due process claim, [a plaintiff] 'must identify a constitutionally protected . . . liberty interest and demonstrate that the government has deprived [him] of the interest without due process of law.'" *Hadwan v. U.S. Dept. of State*, 139 F.4th 209, 224 (2d Cir. 2025). The Due Process Clause accords a liberty interest "to all persons within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Accordingly, "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993); *see also Hechavarria*, 891 F.3d at 54 (recognizing government's "constitutional obligation to provide procedural due process for immigrants facing removal").

Here, Eddie has a constitutionally protected liberty interest in avoiding summary removal in the absence of a final order of removal and while his removal is barred by the automatic stay provision. *See supra* Section I.A.2–3; *Hadwan*, 139 F.4th at 224. Therefore, "the only 'question that remains is what process is due.'" *Id*. (alterations omitted). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Eddie's removal within 72 hours of his arrest without any notice or opportunity to be heard or access to counsel and in violation of an in-effect stay of removal does not satisfy this "fundamental requirement."

"In determining what kind of protections 'the particular situation demands,' a court must consider" the three factors articulated by the Supreme Court in *Mathews*. *Hadwan*, 139 F.4th at 225. The *Mathews* factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Each of these factors weighs in Eddie's favor.

**1. The first *Mathews* factor weighs in Eddie's favor.**

The first *Mathews* factor weighs heavily in Eddie's favor. The private interest in being free from summary removal in violation of the INA and its implementing regulations is substantial. *See supra* Section I.B. At the most basic level, Eddie has a liberty interest in being free from removal absent due process. *See Flores*, 507 U.S at 306; *Hechavarria*, 891 F.3d at 54. More specifically, the statutory and regulatory scheme staying removal pending his appeal to the BIA affords Eddie a liberty interest in being free from removal without a final order of removal. *See,*

*e.g.*, *Abrego Garcia*, 777 F. Supp. 3d at 517 ("Abrego Garcia has demonstrated that he had a liberty interest by virtue of the INA in avoiding forcible removal to El Salvador."). Because his case is currently on appeal to the BIA, Eddie's immigration proceedings have not concluded, he does *not* have a final order of removal, and the regulatory automatic stay of removal remains in place—as was the case at the time of his summary removal. *See supra* Section I.A.2; *see also Roe v. United States*, No. 18-CV-2644 (VSB), 2019 WL 1227940, at *3 (S.D.N.Y. Mar. 15, 2019) ("The timely filing of the appeal to the BIA automatically stayed the order of removal. . . . It also meant that the removal order did not become final.") (citing 8 C.F.R. § 1003.6; 8 U.S.C. § 1101(a)(47)). Defendants' summary removal of Eddie thus frustrated his substantial interest in being free from removal while his appeal remained pending at the BIA and prior to him receiving a final order.

**2. The second *Mathews* factor weighs in Eddie's favor.**

The second *Mathews* factor favors Eddie because the erroneous deprivation of his liberty interest is the direct result of the government's failure to adhere to established procedures. The INA, 8 U.S.C. § 1101(a)(47), and the automatic stay regulation, 8 C.F.R. § 1003.6, provide noncitizens in Eddie's position with safeguards against summary removal while their BIA appeals are pending. *See supra* Section I.A.2. "Avoiding erroneous deprivation of legitimate interests is what the automatic stay regimen is reasonably calculated to prevent." *Sanchez Cruz*, 833 F. Supp. 3d at 795. Thus¸ "the statutes [and regulations] at issue eliminated the discretion altogether" for Defendants seeking to remove Eddie. *Abrego Garcia*, 777 F. Supp. 3d at 517. Nevertheless, Defendants removed Eddie, ignoring that he lacked a final order of removal and the governing law that prohibited his removal. Moreover, Defendants denied him a meaningful opportunity to contest his removal by refusing him access to counsel, Eddie Decl. ¶¶ 18, 30, 35, 37, 41, transferring him throughout New York and subsequently to Texas, and forcibly removing him in less than 72 hours,

*id*. ¶¶ 35-42. At NBC, Eddie showed agents his valid EAD, which displays USCIS Category "C10", signifying his ongoing cancellation of removal case, but Defendants ignored that, too. Eddie Decl. ¶¶ 21, 27-29; Grossman Decl., ¶ 8, Ex. 6.

Courts have found violations of procedural due process under similar circumstances. *See, e.g.*, *Abrego Garcia*, 777 F. Supp. 3d at 517 (finding violation of procedural due process where plaintiff was forcibly removed to El Salvador "without *any procedural protections* due to him"); *A. A. R. P. v. Trump*, 605 U.S. 91, 95 (2025) ("Under these circumstances, notice roughly 24 hours before removal, devoid of information about how to exercise due process rights to contest that removal, surely does not pass muster."). The second *Mathews* factor therefore favors Eddie because his summary removal posed a high risk of erroneous deprivation of his liberty interests and because federal law provides clear procedures that protect against exactly that outcome.

**3. The third *Mathews* factor weighs in Eddie's favor.**

The third *Mathews* factor also weighs in Eddie's favor because the government's interest does not extend to removing noncitizens in violation of governing law. "The public interest is best served by ensuring the constitutional rights of persons within the United States are upheld." *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *13 (S.D.N.Y. May 23, 2018); *Paykina ex rel. E.L. v. Lewin*, 387 F. Supp. 3d 225, 245 (N.D.N.Y. 2019) (same). Thus, the Supreme Court has recognized that "there is a public interest in preventing [noncitizens] from being wrongfully removed." *Nken v. Holder*, 556 U.S. 418, 436 (2009); *see also Abrego Garcia*, 777 F. Supp. 3d at 519 (recognizing public interest in preventing wrongful removal and agency adherence to law). And while "[t]he Government's interest in removing noncitizens subject to final orders is legitimate," that interest "does not . . . extend to removing them during a window in which Congress and the agency have commanded that removal not occur." *Sanchez Cruz*, 833 F. Supp.

3d at 795; *see also Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 144 (W.D.N.Y. 2025) ("[W]hile [Defendants] might want to enforce this country's immigration laws efficiently, it cannot do that at the expense of fairness and due process.").

Because all three *Mathews* factors weigh heavily in Eddie's favor, he is likely to succeed on his claim that his summary removal violated Due Process.

## II. EDDIE SUFFERS ONGOING IRREPARABLE HARM FROM HIS UNCONSTITUTIONAL REMOVAL AND SEPARATION FROM FAMILY.

Eddie is suffering irreparable harm from the deprivation of his constitutional rights and from the resulting separation from his family. "[T]he alleged violation of a constitutional right triggers a finding of irreparable injury." *Connecticut Dep't of Env't Prot. v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004) ("[V]iolations of constitutional rights are presumed irreparable."). Eddie suffers irreparable harm from the continuing violation of his Fifth Amendment Due Process rights arising from his summary removal. *See Immigr. Ctr. for Women & Child. v. Noem*, 351 F.R.D. 324, 392 (C.D. Cal. 2026) (finding irreparable harm where noncitizens showed a likelihood of success on Due Process violations through wrongful removals).

The irreparable harm Eddie suffers due to the series of constitutional violations arising out of his illegal removal is compounded by his separation from his U.S. citizen wife and children. "Courts, including those within this Circuit, have recognized indefinite family separation as a form of irreparable injury." *Make the Road New York v. Pompeo*, 475 F. Supp.3d 232, 268 (S.D.N.Y. 2020) (collecting cases). Financial hardship and disruption of childcare resulting from family separation constitute additional harms. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (noting "irreparable harms" of family separation, including "economic burdens imposed on detainees and their families" and "collateral harms to [their] children"); *Doe v. Noem*, 832 F. Supp.

3d 353, 379 (S.D.N.Y. 2026) (recognizing family separation would "thwart [Plaintiffs'] efforts to provide or care for their loved ones").

For Eddie and his family, the harm caused by their ongoing separation is severe. Eddie Decl. ¶¶ 46–56; Liz Decl. ¶¶ 25–33. Eddie's absence strains Liz physically and emotionally, leaving her to work through injury and care for their children alone while the household's income has been cut in half. Liz Decl. ¶¶ 26, 29; Eddie Decl. ¶ 47. Liz and the boys' health and wellbeing have declined without Eddie, whom they cannot afford to visit. Liz Decl. ¶¶ 12–13, 16, 27–29, 31; Eddie Decl. ¶¶ 47–52. Eddie, in turn, has had difficulty sleeping, little appetite, and has lost forty-five pounds since his removal. Eddie Decl. ¶ 53; Liz Decl ¶ 27. Eddie's and his family's harm is not only severe but ongoing: it compounds with each day that Eddie remains in Guatemala, leaving Liz to parent alone and depriving the boys of their father. The irreparable harm factor thus favors granting Eddie preliminary relief so that he can be reunited with his family.

## III. PROTECTING EDDIE'S CONSTITUTIONAL AND STATUTORY RIGHTS IS IN THE PUBLIC INTEREST AND OUTWEIGHS ANY POTENTIAL HARDSHIP TO THE GOVERNMENT.

"The public interest generally supports granting a preliminary injunction where, as here, a plaintiff has established a clear likelihood of success on the merits and made a showing of irreparable harm." *Lewin*, 387 F. Supp. 3d at 245. "This is especially true when constitutional rights are at stake." *Id*. The public interest is served by federal agencies complying with the law, including in "preventing [noncitizens] from being wrongfully removed." *See Nken*, 556 U.S. at 436. Courts "must be guided by the underlying principle that the government should be denied the right to exploit its own illegal conduct[.]" *United States v. Toscanino*, 500 F.2d 267, 275 (2d Cir. 1974). Preventing wrongful removals also serves the important public interest in protecting "the constitutional liberty interest of parents in the care, custody, and control of their children, which

is perhaps the oldest of the fundamental liberty interests recognized by the Supreme Court." *Ms. L. v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 1133, 1148 (S.D. Cal. 2018), *modified*, 330 F.R.D. 284 (S.D. Cal. 2019) (citation omitted and cleaned up).

The relief sought would impose no hardship on the government. Eddie seeks only for the government to "facilitate" his return to the United States and to allow him to pursue his cancellation of removal case. Granting such relief imposes no burden beyond requiring the government to comply with its own legal obligations.[4] Because the relief sought serves the public interest and will not cause hardship to the government, the balance of equities and the public interest both favor granting preliminary relief.

## IV. EDDIE SHOULD BE RETURNED TO NEW YORK.

Remedying Eddie's wrongful seizure, arrest, detention, and summary removal requires restoring Eddie to the *status quo ante* and allowing his immigration case to continue as it would have absent his unlawful removal. This means returning Eddie to the position he occupied before his unlawful arrest and detention on September 4, 2025—at liberty in this judicial district, with his removal order stayed under 8 C.F.R. § 1003.6(a) and his BIA appeal pending.[5] This is the remedy

[4] The government has an existing procedure for facilitating the return of noncitizens to the United States. *See* ICE Policy Directive No. 11061.1, § 3.1, Facilitating the Return to the United States of Certain Lawfully Removed Aliens (Feb. 24, 2012).

[5] Return to this judicial district is required because absent Defendants' unlawful conduct at the outset, Eddie would not have been detained without an individualized determination of flight risk or danger, and he would have remained in the country while his appeal was adjudicated. *See, e.g.*, *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025) ("Petitioner's re-detention without any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest."); *Khabazha v. U.S. Immigr. & Customs Enf't*, No. 25-CV-5279 (JMF), 2025 WL 3281514, at *8 (S.D.N.Y. Nov. 25, 2025) (holding "re-detention" of noncitizen previously released from custody "absent any showing of flight risk or danger does not serve the[] statutory purposes" of 8 U.S.C. § 1226(a) (citation omitted)). Defendants' re-detention of Eddie was thus unlawful in the first instance and would again be unlawful if carried out immediately upon his return to the United States.

the Supreme Court endorsed in *Abrego Garcia* and the district court subsequently implemented. *See Noem v. Abrego Garcia*, 145 S. Ct. at 1018 (affirming relief "to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador"); *Abrego Garcia v. Noem*, 811 F. Supp. 3d 741, 749 (D. Md. 2025) ("The Court . . . ordered Abrego Garcia's release and return to ICE supervision out of the Baltimore Field Office.").

Restoring people wrongfully removed to the *status quo ante* is a familiar and routine procedure. "[C]ourts[] regularly find that return is the appropriate remedy when a removal is found to be unlawful." *D.V.D. v. U.S. Dep't of Homeland Sec.*, 784 F. Supp. 3d 401, 406 (D. Mass. 2025) (collecting cases). The *D.V.D.* court ordered such a remedy for at least one plaintiff "which the Government later facilitated." 821 F. Supp. 3d 102, 122 (D. Mass. 2026)). Other courts have ordered similar relief. *See, e.g.*, *Orellana Cruz v. Oddo*, No. 3:26-CV-00284, 2026 WL 1650733, *3 (W.D. Pa. June 8, 2026) (ordering government to facilitate return of noncitizen deported during BIA appeal); *Lopez v. Blanche*, No. 2:26-CV-01298-CDS-EJY, 2026 WL 1875797, at *4 (D. Nev. June 29, 2026) (ordering government to facilitate return of noncitizen deported without adequate notice "to restore . . . position the petitioner would have occupied absent the respondents' unauthorized action").[6]

Moreover, courts have recognized return as the appropriate remedy for seizures in violation of the Fourth Amendment. *See, e.g.*, *Doe 1 v. Noem*, No. CV 26-2331, 2026 WL 927961, at *6 (C.D. Cal. Mar. 30, 2026) ("Restoration to the *status quo ante litem* requires Doe 2 to remain out of custody and to be returned to the care of Doe 1, his conservator, upon his return to the United

[6] *See also, e.g.*, *Martinez-Andino v. U.S. Dep't of Homeland Sec.*, No. CV 26-1208 (BAH), 2026 WL 1801137, at *18 (D.D.C. June 23, 2026); *Quintanilla v. Mullin*, No. 25-CV-02513-LKG, 2026 WL 1481116 (D. Md. 2026); *Pablo Pablo v. Lyons*, 811 F. Supp. 3d 833, 838 (W.D. Tex. 2025); *Duarte v. Warden*, No. EP-26-CV-00089, 2026 WL 1392585, at *4 (W.D. Tex. 2026).

States."); *cf. Toscanino*, 500 F.2d at 275 (noting "the government should as a matter of fundamental fairness be obligated to return [noncitizen] to his *status quo ante*" after unlawful seizure and instructing district court to order noncitizen defendant's return to Uruguay), *abrogated on other grounds by In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 157, 167 (2d Cir. 2008).

Consistent with the foregoing authority, facilitating Eddie's return requires providing Eddie "with a travel document permitting his admission at a United States port of entry, or alternatively [] issu[ing] a boarding letter sufficient to permit him to board a commercial flight to the United States." *Sanchez Cruz*, 833 F. Supp. 3d at 797. Such measures are "within the Government's existing authority" and return Eddie "to the physical jurisdiction of the immigration court without cost to the Government and without disrupting any valid Government function." *Id.*

## CONCLUSION

For the foregoing reasons, Eddie respectfully moves this Court for an order requiring Defendants Mullin, Venturella, Brophy, and D'Amato to return him to the *status quo ante* prior to his unlawful seizure, arrest, detention, and removal. Eddie requests that Defendants facilitate his return to the United States by providing him with travel documents to permit his lawful admission at a port of entry and his travel to this judicial district. Lastly, Eddie requests that this court enjoin Defendants from re-detaining him absent a material change in circumstances such as entry of a final order of removal not subject to a stay.

Dated: September 14, 2026

Respectfully submitted,

**NEW YORK CIVIL LIBERTIES UNION FOUNDATION**
*/s/ Perry Grossman*
Perry Grossman (#702421)
Wafa Junaid (#706888)
Claire Molholm (#706788)
Thomas Munson (#707489)
Molly Biklen (#515729)
125 Broad Street
New York, New York 10004
Phone: (212) 607-3300
pgrossman@nyclu.org
wjunaid@nyclu.org
cmolholm@nyclu.org
tmunson@nyclu.org
mbiklen@nyclu.org

**WORKER JUSTICE CENTER OF NEW YORK**[7]
*/s/ Olivia Post Rich*
Olivia Post Rich (#703805)
Malcolm Kim (#706400)*
1187 Culver Road
Rochester, New York 14609
Phone: 646-545-2211
opostrich@wjcny.org
mkim@wjcny.org

**PAUL TUCK LAW**

*/s/ Paul J. Tuck*
Paul J. Tuck (#520814)
PO Box 44
Manlius, New York 13104
(315) 314-4545
paul@paultucklaw.com

**ARNOLD & PORTER KAYE SCHOLER LLP**

Diana E. Reiter*
Lucy S. McMillan*
Kristine Rose Itliong (#704401)
Alexis Gannaway*
250 West 55th St.
New York, NY 10019
T: (212) 836-8000
F: (212) 836-8689
diana.reiter@arnoldporter.com
lucy.mcmillan@arnoldporter.com
kristine.itliong@arnoldporter.com
alexis.gannaway@arnoldporter.com

Stephanie M. Bonnett**
Gabriela E. Guimaraes Weldon**
601 Massachusetts Ave. NW
Washington, DC 20001
T: (202) 942-5000
F: (202) 942-5999
stephanie.bonnett@arnoldporter.com
gabriela.guimaraesweldon@arnoldporter.com

*Counsel for Plaintiffs*

*Application for NDNY admission forthcoming.
**Application for *pro hac vice* admission forthcoming.

[7] We thank María Perales Sánchez of Worker Justice Center of New York, admission pending, for her work on this motion.