# EXHIBIT 4

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
BUFFALO, NEW YORK

File: [redacted]

June 14, 2023

In the Matter of

| | | |
|---|---|---|
| HEDIBERTO RAMIREZ-PEREZ | ) | IN REMOVAL PROCEEDINGS |
| RESPONDENT | ) | |

CHARGES: INA Section 212(a)(6)(A)(i) on September 11, 2018

APPLICATIONS: Cancellation of removal for certain nonpermanent residents. Respondent was previously granted post conclusion voluntary departure.

ON BEHALF OF RESPONDENT: Jose Perez

ON BEHALF OF DHS: Robert Levy

ORAL DECISION OF THE IMMIGRATION JUDGE

FACTUAL AND PROCEDURAL HISTORY

Respondent as a 45-year-old native and citizen of Guatemala. Respondent is married to Elizabeth Ramirez Abrams [phonetic]. The date of marriage was August 23, 2014, place of marriage was Sterling, New York~~.~~, ~~A~~and the spouse's current address is [redacted] Fulton, New York. Respondent has two United States citizen children, being [redacted] [phonetic], born

[redacted] 2012, and [redacted] [phonetic], born [redacted] 2011. Respondent was shown to be the father of each of these children based on their birth certificates. Both of these children are United States citizens, as is Elizabeth Ramirez Abrams. Respondent also has two other children that were born in and remain in Guatemala. Respondent entered the United States at or near Douglas, Arizona, on or about May 25, 2005, although on the application for cancellation of removal, it states May 20, 2005. Respondent entered the United States without inspection or parole into the United States by an immigration officer. At the time of entry, respondent was 27 years old. Respondent has been in the United States approximately 18 years.

______A Notice to Appear, dated July 21, 2007, was served on respondent on July 21, 2007, filed with the court on July 27, 2007, which vested jurisdiction with the immigration court. The respondent did concede proper service on September 11, 2018. The charge of inadmissibility was sustained as set forth above. On May 20, 2008, the case was administratively closed. The case was placed back on the docket and came on for hearing September 11, 2018. Two immigration judges were conflicted off of the case, and the case was assigned to a third immigration judge who rendered the decision granting voluntary departure on October 16, 2018 and pretermitting respondent's request to be considered for cancellation of removal. At the hearing on September 11, 2018, respondent admitted the four allegations and conceded the charge under INA Section 212(a)(6)(A)(i). Respondent designated Guatemala as the country of removal. See transcript, September 11, 2018, Page 7. Respondent stated that he desired to pursue cancellation of removal. The court found that the combination of the Notice to Appear and notice of hearing were sufficient to cure the defect in the Notice to Appear, which did not designate the date or time of the initial hearing in this matter. Respondent applied for post conclusion voluntary departure and sought cancellation of removal. ~~B~~

but the court found that the respondent was ineligible for cancellation of removal and refused to hear evidence on the cancellation of removal. On October 16, 2018, a different immigration judge granted respondent's request for post conclusion voluntary departure. Respondent reserved his right to appeal the court's decision not to permit him to present evidence on cancellation of removal. See transcript, October 16, 2018, Page 50. Respondent timely appealed the immigration judge's decision to the Board of Immigration Appeals,.-A and on November 19, 2020, the Board dismissed the appeal but granted voluntary departure. Respondent filed a petition for review with the 2nd Circuit Court of Appeals. On April 29, 2021, the United States Supreme Court issued its decision in Niz-Chavez v. Garland, 593 U.S. Blank, which held that a Notice to Appear sufficient to trigger the IIR-IRA's stop time rule is a single document containing all the information about an individual's removal hearing, specified in Section 1229(a)(1). See Pages 4 through 12. And that's at the syllabus.

______On November 2, 2022, the 2nd Circuit Court of Appeals remanded the case to the Board of Immigration Appeals and ordered that the court permit respondent to file an application for cancellation of removal for certain nonpermanent residents and take evidence on that application. The Board of Immigration Appeals subsequently remanded the case to the immigration court and ordered essentially the same thing. The case on remand was assigned to an immigration judge who did not hear the original case. The case was subsequently reassigned from that immigration judge to the instant immigration judge, who also did not hear the original case. On June 8, 2023 and June 14, 2023, this matter came on to be heard on respondent's request for cancellation of removal for certain nonpermanent residents.

## STIPULATIONS AND EVIDENCE

The parties stipulated to the following matters related to respondent's

applications for relief from removal. One, respondent would testify consistently with the contents of the 42B application and any supplemental sheets and updates. Two, respondent has 10 years of continuous physical presence in the United States immediately preceding the date of the application. Three, respondent was not convicted of a disqualifying criminal offence. And four, that the respondent has a qualifying relative. In this case, the court finds that Elizabeth Ramirez Abrams, respondent's wife, is a qualifying relative, as she is a United States citizen, that [redacted], born [redacted] 2012, is a qualifying relative as he is respondent's United States citizen child. The court further finds that [redacted] born [redacted] 2011, is also respondent's United States citizen child. The issues to be resolved dealt with respondent's good moral character for the 10 years preceding the entry of a final administrative decision, discretion, and exceptional and extremely unusual hardship. Three witnesses testified at the hearing, being respondent, Hediberto Ramirez-Perez, Elizabeth Ramirez Abrams, respondent's spouse, and Pastor Paul Reinoso [phonetic], respondent's pastor. Ten exhibits were entered into evidence in this case. Exhibit 1, Notice to Appear, filed July 27, 2007. Two, order on administrative closure, filed May 28, 2008. Three, respondent's motion to calendar, filed on July 27, 2018. Four, notice of hearing, dated August 20, 2018, for the hearing scheduled September 11, 2018. Exhibit 5, respondent's voluntary departure evidence, filed October 1, 2018, including Tabs A through C. Exhibit 6, the order granting voluntary departure, filed October 16, 2018. Exhibit 7, BIA remand order to consider the respondent's 42B application, filed November 10, 2022. Exhibit 8, respondent's proof of payment of filing fee for the 42B application. Exhibit 9, the 42B application, filed January 13, 2023, filed with USCIS on October 19, 2021. Exhibit 10, respondent's evidence filed April 26, 2023, including Tabs A through H. Respondent also attempted to file evidence with the court after the

last hearing. Just a minute. Although apparently delivered to the court, it has not been forwarded to this immigration judge. So, the immigration judge has not been able to review that exhibit. The court excluded it from evidence and notes that it was represented to the court by attorney Perez that he submitted a corrected 42B application that corrected an address and employment information. Exhibit 2 was a child support initial order. Exhibit 3, child support payments. Exhibit 4, a modification of the order after the children went to live with him, and the child support amount while the children were living with him. Exhibit 5, a balance sheet showing no child support arrears. Exhibit 6 is an affidavit of Caroline Kim [phonetic], who apparently assisted him with housing and, also, helped him after his involvement in the gas explosion. The court finds that the court did give the respondent an opportunity to correct any errors in the 42B application at the initial hearing. One modification was made as to a current address. No other modifications were made at that time. The court finds that the child support information should have been previously submitted to the court. And with regard to Exhibit 6, the court finds that this purported affidavit -- and I say purported because I've not seen it -- likely would have been available to have been submitted to the court prior to Monday of this week. So, the court finds that each of these proposed exhibits are late filed, without sufficient reason excusing their late filing, and does exclude them from evidence. The court did take testimony with regard to child support that was ordered and paid and doesn't believe that the Exhibits 2 through 5 would have made any difference in the court's decision in this matter. With regard to the updated address for the respondent's wife and corrections to the employment -- although the court's notes these incorrect submissions, the court also does not find that they are sufficiently material to cause the court to find that the respondent is not credible. So, the court is excluding those exhibits. The court is not going to list the sub tabs and the

sub exhibits under each tab, as they are apparent what they are from the filed exhibits. The court would note that in making its findings of fact and analyzing the evidence, the court carefully reviewed all of the evidence submitted, even if not stated explicitly herein. I have read each and every page of the exhibits submitted, some of them multiple times. If there is evidence that appears to contradict the court's findings, the court did put more weight on the evidence considered and stated herein.

ADDENDUM OF LAW

The court will provide a copy of the standard addendum of law to counsel for DHS and respondent and incorporate said addendum herein by reference. This court has relied upon this addendum of law in coming to its decision in this matter.

COUNTRY OF REMOVAL

Guatemala was designated as respondent's country of removal.

BURDEN OF PROOF, CREDIBILITY, AND CORROBORATION

CREDIBILITY

The court finds that Pastor Paul Reinoso was a credible witness. The court finds that respondent's wife, Elizabeth Ramirez Abrams, was a credible witness. And although the court did have some difficulty with some of respondent's statements, the court does find that he was a credible witness, as well. The court does note that with regard to respondent's candor, there were times when his candor was appropriate, and other times when it appeared to the court that he was attempting to minimize certain behaviors or to maximize his involvement in the children's lives, when, from the documentary evidence submitted, it is clear that his involvement in attending meetings and doctor's appointments was minimal. So, the court does find that respondent, generally, was a credible witness.

CORROBORATION

Corroboration there were there was at least one significant hole in corroboration, and that has to do with any medical records substantiating Elizabeth Ramirez Abrams' claimed hospital stay and treatment after her situation. And the court does note the reason given by attorney Perez for not having those submitted to the court. But the court does note that information could have been provided to obtain medical records and especially drug treatment records. A HIPAA release is needed. And if the patient -- that being Ms. Ramirez Abrams -- went and signed a HIPAA release, those documents should have and could have been readily obtained. Apparently, that did not occur. And, so, that is an area of corroboration that the court expected documentation for and did not have. The court will not deny respondent's claim based on a lack of corroboration, however, as the court did find that Ms. Ramirez Abrams was a credible witness.

ANALYSIS OF APPLICATIONS FOR RELIEF

CANCELLATION OF REMOVAL AND ADJUSTMENT OF STATUS FOR NON-LAWFUL PERMANENT RESIDENTS

The court will not set forth the legal standards necessary to be granted cancellation of removal, as those are apparent from the standard addendum of law that has been attached. However, the court will note that respondent does have no statutory bars to relief, that the parties stipulated, and the court finds that the respondent does have 10 years of continuous physical presence in the United States. The parties also stipulated, and the court so finds, that the respondent does not have any disqualifying criminal convictions. The parties stipulated, and the court so finds, that the respondent does have qualifying relatives, as set forth above. The issues that the court will address have to do with good moral character for the requisite 10 year time period, exceptional and extremely unusual hardship, and the court's discretion. With regard to good moral

character, the court has a difficult time finding that the respondent has good moral character when he has not filed a tax return since 2017. The court does note that it does have the transcript of the 2017 IRS tax filing. Respondent stated that he didn't file tax returns from 2018 through 2022 because he and his wife were separated and that she claimed the children on her tax forms. And, so, he did not file tax returns because he was not sure how to do so since she was claiming the children. The court notes that on the 2017 filing, contained in Exhibit 5, Tab B, Numbered Page 45, that the respondent's filing status was filing married, filing separate. And the two children were not taken as dependents in this tax filing. So, respondent's statement as to why he didn't file for 2018 to 2022 rings hollow to the court. And believes that it is belied by the fact that in 2017, he did exactly what he said he could not do in 2018 through 2022. So, based on the reason that he gave, and given the fact that from the documentary evidence, it appears not to be a truthful reason, the court finds that he has not been a person of good moral character for the requisite time period. Given that finding, the court does find that he has not established eligibility for cancellation of removal and denies his application therefore.

______The court, however, will continue to address the other areas in this case, that being exceptional and extremely unusual hardship to the qualifying relatives. The court notes that the applicant must show that their qualifying relative would suffer hardship substantially beyond that which would ordinarily result from a noncitizen's removal. Matter Of Monreal, 23 I&N Dec. 56, 59 (BIA 2001). The applicant need not show that such hardship would be unconscionable. Id at 61. Only the hardship to the applicant's qualifying relative is considered, although hardship to the applicant may be evaluated insofar as it affects their qualifying spouse, parent, or child. INA Section 240A(b)(1)(B). Monreal, 23 I&N Dec. 63. In the reviewing the factors, the court notes that the

respondent is a 45-year-old Spanish speaking and English speaking man, who does have a wife and two children in the United States. In his country of Guatemala resides his mother and two children, one born in 2003, one born in 2005, three sisters, three brothers, four aunts, three uncles. The court has also reviewed the conditions in the home country and does note that if he were removed to the home country of Guatemala, that his employment opportunities would be substantially reduced from what they are now. But he would also have family in Guatemala to help him to become established there. The court also notes the Matter of Calderon-Hernandez, 25 I&N Dec. 885 (BIA 2012), where it states: "in this case, by contrast, only one parent is in proceedings. Where both parents are living in the United States and the parent who is in proceedings indicates an intention that a child will remain in the United States upon his or her removal, an affidavit and other documentary evidence regarding the care and support of the child is not required. This is so even if the respondent intends to leave the child with a parent who is not lawfully in this country. It is reasonable in such cases to assume that the child will be cared for and supported by the parent who remains here absent evidence to the contrary." See Matter Calderon Hernandez, 25 I&N Dec. 885 (BIA 2012), at 886, 887. The court finds that in this case, that the children would remain in the United States with their United States citizen mother. The United States citizen mother is currently employed. If after school and summer care is needed for the children, she does have family who is providing and has provided such care. The court notes that there likely would be a diminishing in economic resources not only to Ms. Ramirez Abrams, but also to the children.

______The court will now undertake the analysis regarding each of the qualifying relatives, individually, and then in the aggregate. Regarding [redacted] the court did review his educational documents set forth at Exhibit 10, Tab E. The records show

that [redacted] has an individualized educational plan addressing concerns with his ability to communicate. On March 10, 2021, it was set forth that [redacted] is a hard worker, but struggles academically in the classroom. The evaluator noted that the evaluation took place during the Covid lockdowns, which negatively impacted many children. Reading, math, written language, and the testing summary are all in the very low range. But he is receiving appropriate support in school to assist him in progressing in these areas. See Pages 111 through 113. [redacted] also had testing in 2018 and 2015 regarding his communication and other deficits. The 2018 assessment made recommendations that were implemented in [redacted] education regimen. The 2015 evaluation was to assist his transition from early intervention to preschool special education. He was receiving speech and language therapy one time per week for 30 minutes. Id at Page 118. [redacted] also has seasonal allergies and had surgery to fix his teeth. His mother reported a family history of learning disabilities. Id at 119. From the 2015 evaluation, recommendations were made to assist him with his speech and language difficulties, articulation, and intelligibility. Id at 126. From a report dated March 18, 2021, [redacted] delays an expressive and receptive language and speech were deemed to continue to be an issue in need of educational and therapeutic assistance. Exhibit 10, Page 141. The evaluation was consistent with the evaluation done in 2018. Exhibit 10, Page 143. [redacted] IEP annual review on May 25, 2022 was attended by his mother and confirmed that [redacted] remained in need of education supports and that there were no new concerns raised. Exhibit 10 at 144. It was recommended that [redacted] receive speech and language therapy two times a week in a small group. In his IEP, the goals were set forth that were to be evaluated at the next annual IEP review. Exhibit 10 at 144 to 153. Medical records were also provided. See Exhibit 10, Pages 130 to 136. These medical records showed that [redacted] suffers from seasonal allergies. Exhibit 10, Tab F, Page 2

and 3. And following additional medical records for [redacted] were submitted in Exhibit 10, Tab F, starting at Page 155. The records reflect a mental health diagnosis of adjustment disorder with mixed disturbance emotions and conduct. This was first mentioned in the diagnosis history on April 3, 2020. Exhibit 10, Page 157. The court finds that in [redacted] medical records, there is no etiology mentioned for the onset of the adjustment disorder. It could be an adjustment from living with both of one's parents to living with just one parent. The court can ascertain very little from the documentary evidence supplied. The court would note that in [redacted] medical records, that it does state that Eddie did have behaviors, and that his younger brother, being [redacted] was starting to mimic those behaviors. In [redacted] medical record from November 21, 2022, his active problem list and conditions were listed. It was noted that [redacted] came in with his mother, who was the historian, and that [redacted] has some behavioral issues, has an IEP in school, that he's in the fifth grade and very happy with school. He has seasonal allergies and takes medication as needed. And at present, he does not have any systemic signs or symptoms of illness. Exhibit 10 at 161. The custody status was noted on Page 162, where it states that he lives with his mother and visits his father. The court notes that this is different than the testimony that was submitted by both parties at court, that the family began living together again in October of 2022. Exhibit 10 at 165 sets forth the plan to treat [redacted] adjustment disorder, where it was recommended that [redacted] get help, either through the school or outside psychiatry. A prior referral was made, but the mother did not make that appointment. It was noted that [redacted] "seems to [be] doing better." ~~[Be].~~ The court finds that he's doing better, maybe because that [redacted] adjustment disorder and acting out were triggered by seeing his older brother act out. And as his brother's issues were addressed [redacted] issues waned. [redacted] behavioral issues were not significantly addressed in the latest

medical records, except as noted above. In testimony, both Pastor Reinoso noted that the children's behavior was getting better. He attributed it to the father's influence and that very well may be. But the court notes that the behavior could also have been because [redacted] behaviors were being properly addressed by steps taken in the school setting. Other steps were listed, as well, including decreasing screen time and improving physical activities. On August 15, 2022, it showed an appointment for [redacted] in the medical setting where both parents were present. The court would note that this is prior the parents claiming to have moved back together. The court does note that it says that [redacted] does have some learning issues and gets extra help in school. The behavior problem is presently doing well. He was getting behavior therapy, but not consistently. Mother is trying her best to decrease use of electronics; had seasonal allergy and takes medication as needed. Other than that, mother did not have any specific questions that were not addressed at the visit. Id at 169. The court notes that at Exhibit 10, Page 75, it sets forth the plan to treat [redacted] adjustment disorder, where is recommended that [redacted] get help either through the school or outside psychiatry. And again, it was noted, even on that date, that a prior referral was made, but the mother did not make that appointment. Exhibit 10, Page 177. The plan was to return in one year for a well child check. So, it's apparent from the medical records that there are no significant issues that needed to be addressed throughout the year. Other documentation shows that [redacted] was brought in for a weight check, a flu shot, and a recheck for seasonal allergies on May 10, 2022. There's home therapy for warts. On Page 184, it states that the patient was referred to dermatology last year, and the mother was contacted multiple times, both by the referral office and by dermatology, and mother could not remember why she was not able to follow through. States that she did have some transportation issues when it came to appointments in Syracuse or

out of the local area. The court notes that it's apparent that respondent also did not step in to assist with making these appointments for treatment that was deemed to be appropriate for the child. Exhibit 10, Page 184 also states, as the patient has been referred for in-house psychiatry, and mother had declined, and presently it looks like patient is doing well, and mother reports that he is not having his regular anger issue or meltdowns that was a big problem last year. So, apparently his behavior was getting better even at that point. The court also reviewed the other medical records. It will not go into detail, but notes that at Page 204, there was no call, no show for an appointment. Page 205 talks about the patient getting anger outbursts, but not often. So, the court has considered the impact on [redacted] if his father were to be removed, and how the father's hardship in Guatemala will impact [redacted] The court notes both the emotional impact of losing a father and notes that this is significant. The court notes that there is also an economic impact. And the court notes that [redacted] does have educational needs, but apparently, his medical needs are minimal at best. The court finds that the emotional and economic hardship is hardship that is similar for anyone whose father is removed from the United States. The court notes and finds that [redacted] would continue to have his learning disabilities addressed by the school and his medical issues taken care of, even if the respondent were removed from the country. So, after reviewing all of the records pertaining to [redacted] and taking into account the testimony presented today, although [redacted] does have some learning issues and minor medical and psychiatric issues, as well as the emotional and economic hardship, the court finds that [redacted] would not suffer exceptional and extremely unusual hardship where his father to be removed from the country. The court also notes that the father apparently did not assist when his son was referred to see a psychiatrist, and the mother did not follow through with those appointments, either. Reviewing the medical and school

records, it is apparent that the supports are in place to assist [redacted] to succeed in school and life.

[redacted]

The court also reviewed [redacted] school records, notes that he does have an individualized educational plan, also known as an IEP. See Exhibit 10. Tab G. At the IEP annual review dated May 6, 2022, the mother and father both participated in person. The mother and father both reported seeing much improvement in [redacted] skills in the school year. They are working with him on reading at home. [redacted] is able to count money at home very well. The speech and language therapist reported on progress with current services that he is currently seeing two times week in small group. He is making progress, recommended to continue speech therapy two times a week in small group. The psychological evaluation was also part of the filing. And noted that [redacted] academic skills are developing well below age expectations at that time. He presented with most significant delays in his ability to communicate functionally. It was recommended that he maintain his classification as a student with learning disability at that time. The test scores set forth on pages 240 and 241 do show significant deficits. On Page 243, it sets forth academic, developmental, and functional needs of the student -- that he needs to improve his oral, reading, fluency, and decoding skills; answer basic comprehension questions about a text, especially when he reads independently; divide numbers; and memorize or become more fluent with his multiplication facts. On Page 246, it sets for the service delivery recommendations. Page 247 is a psychological report for [redacted] day-to-day, April 9, 2021. Teacher ~~your~~ feedback showed that [redacted] works well in class, but some days struggles and is anxious in unfamiliar situations. Testing results confirmed that [redacted] has a very low verbal ability. And the recommendations and summary of the tester

were that there be no changes to [redacted] program. The court notes that that was from April of 2021, about a year and a half before respondent and respondent's wife state that they got back together. The court notes that the evaluation from May 28, 2018, on Page 256, largely mirrors the information from the report in 2021. There are various reports recommending that [redacted] continue to receive IEP speech and language services. Exhibit 10, Page 263. In reviewing the reports back to 2016, there were recommendations that [redacted] be classified as a student with a speech or language impairment and receive speech and language therapy, and that he receive further psychoeducational testing to determine educational needs. The school did make those efforts and have made appropriate recommendations to assist [redacted] with his educational and learning needs. And although it is clear that [redacted] does have speech and language and other educational needs, respondent has not demonstrated how his removal from the country would significantly negatively impact the treatment regimen that has been instituted by the school to help [redacted] to progress in these areas. The court does note that the respondent testified that they have been reading with [redacted] and helping him with his homework, ~~.~~ ~~A~~and the court finds that even if respondent were removed, [redacted] mother would still be available and present to be able to do so. Exhibit 10, Tab H starting at Page 270, are ~~at~~ [redacted] medical records. Respondent did testify that he did not attend any medical appointments for [redacted] The medical information submitted show appointments from March 6, 2018 to January 16, 2023. There are various diagnoses, including allergic rhinitis, chronic constipation, and being overweight, other intellectual disabilities, among others. He was taking appropriate medication for constipation and had allergies. He was referred to a pulmonary specialist as he had some trouble breathing. Exhibit 10, Page 320 shows that the child was referred to the developmental clinic multiple times. And mother was not able to

follow through, due to either issues of transportation. Oor, last year, it was the pandemic. Custody was noted that the child lives with his mother. Id at Page 321. On Page 329, the mother did state that when [redacted] runs, he gets short of breath. At the April 3rd, 2020 appointment, mother stated that the patient is very sensitive, and moody -- cries for no reason. Says that if she stops him from eating extra food, he gets very upset. If she does not let him play video games all day long, he gets very upset. He has developmental delays and some intellectual issues. She states that he is supposed to be getting extra help in school. But these days when he is home from school because of the pandemic, the mother is having some difficulty trying to deal with him and making him to do the school work. The court notes that in this document, it also states: "younger sibling who is also home, has some anger issues, which were never a problem at home. But since the patient[, being [redacted] makes such a big deal about everything, the sibling also is beginning to have some emotional outbursts." The court notes that the pandemic, at this time, is over. Both children are back in school,. A and both appear that their behavioral issues have been and are being resolved.

______At Page 341 of that evidence, there's a recommendation that a referral that the child make an appointment with Doctor Pellegrino [phonetic] at the University Hospital Developmental Clinic with the concern of autism. And there is no evidence that this appointment was made or kept, or the outcome of the appointment, if it were made or kept. At Pages 341 and 342, it also states that there is a referral to the Margaret Developmental Center [phonetic]. But for some unknown reason, the parents were not able to follow through. And now, the patient is too old for that institute for evaluation -- and is not taking new patients. The court finds that [redacted] has no significant medical issues, as is demonstrated by the lack of ongoing frequent appointments for chronic or serious medical issues. For some areas that were identified as needs, referrals were

made, but in some instances, not followed through. See the autism referral on Page 341. The respondent has not demonstrated how his removal from the country would significantly negatively impact [redacted] medical care.

______The court finds that [redacted] also would continue to have his learning disabilities addressed through the IEP and through school services. The court also finds that even though respondent has been reading with [redacted] that his mother could continue to do so, even if he were removed. The court also finds that the medical issues that [redacted] does have could continue to be addressed, even if respondent were removed from the country. The court has taken into account the emotional and economic harm that also would inhere with the father's removal,. Aand, also, the influence that a father has in both of his children's lives. And the court finds that those are not exceptional or extremely unusual. In reviewing all of [redacted] issues, educational, developmental, medical, social, and economic, the court finds that respondent has not demonstrated that [redacted] would suffer exceptional and extremely unusual hardship if he were removed from the country. Even in reviewing both [redacted] and [redacted] issues in the aggregate, the court finds that the respondent has not demonstrated that they would suffer exceptional and extremely unusual hardship if he were removed from the United States.

<u>ELIZABETH RAMIREZ ABRAMS</u>

In his 42B application, respondent submitted that his wife would suffer exceptional and extremely unusual hardship if he were removed from the United States. Respondent has not submitted any documentation specific to Ms. Abrams to demonstrate that she has a chronic or serious condition that necessitates respondent's ongoing presence in the United States. In her testimony, Ms. Ramirez Abrams did state that she did have some substance abuse issues and emotional issues in the past, that she has, through the assistance of respondent, been able to overcome and appears to

have overcome. The court does find that the respondent and his wife were separated for approximately seven years, up until October of 2022. The court does note that a husband and wife being separated is a definite hardship. The court notes that the income in the family apparently would be cut in half, but also would note that Ms. Ramirez Abrams commenced employment in February of this year and does contribute to the household expenses. So, although the respondent was instrumental in helping her to overcome the substance abuse and other issues that she had in the past, the court finds that respondent has not demonstrated that his wife would suffer exceptional and extremely unusual hardship if he were to be removed from the United States. The court has also considered how respondent's hardship in the country of removal would impact his qualifying relatives. The court notes that his economic opportunities would be reduced, and he would be able to help with less money toward family expenses. He would not be directly present in his children's or his wife's lives. The court notes that he could contact his children by electronic means,. Aand there's nothing that would preclude the children from visiting their father in Guatemala. Although the children and the family's standard of living may be lowered, this does not alter the court's findings above. The court further finds that it is apparent from reviewing the medical records that the father had limited contact with the children during his separation from the wife. See generally the medical records submitted in Exhibit 10. And considering the above and all of the proposed qualifying relatives' hardship in the aggregate -- even considering all of them in the aggregate, the court finds that the respondent did not demonstrate that his qualifying relatives in the aggregate would suffer exceptional and extremely unusual hardship if he were to be removed from the United States.

DISCRETION

In reviewing the discretionary factors, the court has taken into account all

of the factors set forth in Matter of C-V-T- and Matter of Marin. Matter of C-V-T-, 22 I&N Dec. 7, Matter of Marin, 16 I&N Dec. 581, 584-585 (BIA 1978). The court does note that respondent does have many favorable factors that would strongly support a finding of discretion in this matter. He is married to United States citizen and has been for almost nine years. He has recently reunited with his wife and children after a seven year separation. He does have two United States citizen children. There is no evidence that he has other family members in the United States. Respondent has been a resident of long duration in the United States, having been here for over 18 years at this point. Respondent came to the United States when he was 27 and is currently 45 years old at this time. The court has taken into account the hardship that the respondent would endure if removed to Guatemala, as it does impact his qualifying relatives. The court has also taken into account the evidence of hardship to the qualifying relatives. Respondent does have no documented service in the United States Armed Forces. Respondent does have an employment history and appears to have been employed since approximately 2006. There's some discrepancy with regard to the employment history. But the court notes that he apparently was employed since 2006. The court does note that he was employed in the United States without authorization. The court did take into account attorney Perez's argument. However, finds that it does not take into account the amount of time that he worked without authorization prior to the order for voluntary departure being put on the record. The court notes, after hearing the testimony from Pastor Reinoso, that the respondent does have value and service to the community, as he is an active member in his church. Respondent also noted the other evidence of good character, being the letter from Doctor Lacks [phonetic], see Exhibit 5, Page 7, and the letter from Caroline Kim Tahani [phonetic], Exhibit 5, Page 12. The court also took into account the negative factors, being the manner of entry

which the court does give some weight to, but very little. The fact that the respondent did work without authorization for a fairly extensive period of time. The issue that the court is concerned most with is the fact that respondent did not present evidence showing that he filed tax returns for the years 2005 to 2007, 2012, or 2018 through 2022. The respondent did present W2s for the tax years 2019 through 2021. And again, this is a factor that weighs heavily on the court's mind because the respondent, in testimony, stated that he didn't file because his wife was separated, had taken the children, and he wouldn't be able to file with the children being deductions on his return. But he showed in 2017 that, indeed, he did file after they were separated and without taking the children as deductions on his return. So, the court finds that this is a very significant negative factor. The court has also taken into account that the respondent stated in his application that the qualifying relatives would not return with him to Guatemala and that he does have his mother, two children, three sisters, three brothers, four aunts, and three uncles in Guatemala. In weighing these factors together, the negative factors against the positive factors, it's a fairly close call, given the weight of the positive factors. But the court has a very difficult time with the statement that he couldn't file returns for 2018 through 2022 and the reason given, therefore, when in fact he did file in contravention of those reasons in 2017. So, the court finds that given that, that the unfavorable factors do outweigh the favorable factors and would deny respondent's request for cancellation of removal in an exercise of the court's discretion.

______Having made the above findings, the court does find that the respondent has not shown by a preponderance of the evidence that he merits an exercise of the court's discretion, and that he has not otherwise, by showing good moral character or exceptional and extremely unusual hardship to a qualifying relative in the aggregate, shown that cancellation of removal should be granted. Therefore, the court does deny

his request for cancellation of removal.

VOLUNTARY DEPARTURE

In reviewing the record, the court finds that the voluntary departure order was not terminated by the BIA. And, so, the court will reinstitute voluntary departure. In this case, the departure shall be on or before August 14, 2023, or under any extension that the Department of Homeland Security may grant, and under any other conditions DHS may direct. It is further ordered that the respondent post a voluntary departure bond in the amount of $500 within five business days with DHS. It is further ordered that the respondent provide to DHS respondent's passport or other travel documentation sufficient to assure lawful entry into Guatemala within 45 days of this order or within any time extension that DHS may grant. It is further ordered that if any of the above ordered conditions are not met as required, or if respondent fails to depart as required, the above grant of post conclusion voluntary departure shall be withdrawn without further notice of proceedings and the following order entered pursuant to 8 C.F.R. §1240.26(d) shall become immediately effective. The respondent shall be removed to Guatemala on the charge set forth in the Notice to Appear.

______Respondent is hereby advised that if respondent fails to voluntarily depart the United States within the time specified or within any extensions that DHS may grant respondent, respondent will be subject to a civil monetary penalty in the amount of $3,000. The respondent will further be ineligible for a period of 10 years to receive cancellation of removal, adjustment of status, registry, voluntary departure, or change in nonimmigrant status. The respondent is further advised that if respondent appeals the decision, the respondent must provide to the Board of Immigration Appeals within 30 days of filing an appeal sufficient proof of having posted the voluntary departure bond. The BIA will not reinstate the voluntary departure period in its final order if the

respondent does not submit timely proof to the BIA that the voluntary departure bond has been posted. See 8 C.F.R. §1240.26(c)(3)(2). The respondent is further advised that if respondent does not appeal the decision, and instead files a motion to reopen or reconsider during the voluntary departure period, the period allowed for voluntary departure will not be stayed, told, or extended. The grant of voluntary departure will be terminated automatically. The alternate order of removal will take effect immediately, and the above penalties for failure to depart voluntarily under INA Section 240B(d) will not apply. See 8 C.F.R. §1240.26(c)(3)(3) and (e)(1).

CONCLUSION

In light of the foregoing, the following orders shall enter.

ORDERS

The respondent's application for cancellation of removal for certain nonpermanent residents is hereby denied. Respondent's application for post conclusion voluntary departure is hereby granted. The country of removal, should the voluntary departure not be complied with, is Guatemala.

***Please see the next page for electronic signature***

Driscoll, Robert
Immigration Judge

Digitally signed by

Driscoll, Robert Immigration Judge

August 31, 2023 11:42 AM